UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHERYL BURTON,

                              Plaintiff,

                    v.

COUNTY OF WESTCHESTER, *et al.*,

                              Defendants.

---

No. 21-CV-1475 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Richard G. Monaco, Esq.
Law Offices of Richard G. Monaco, P.C.
South Salem, NY
*Counsel for Plaintiff*

Irma W. Cosgriff Esq.
Westchester County Attorney's Office
White Plains, NY
*Counsel for Defendants County of Westchester, Former Westchester County District Attorney
Anthony A. Scarpino, Jr., Asst. District Attorney Sharleen Bailon, and Asst. District Attorney
Shameika Mathurin*

John J. Walsh, II, Esq.
Hodges Walsh & Burke LLP
White Plains, NY
*Counsel for Defendants City of White Plains Police Department, Sergeant Steven Carelli, Police
Officer Robert Rodriguez, and Police Officer Ross Wade*

KENNETH M. KARAS, United States District Judge:

      Cheryl Burton ("Plaintiff") brings this Action, pursuant to 42 U.S.C. § 1983 ("§ 1983")

and state law, against the County of Westchester ("Westchester County"), former Westchester

County District Attorney Anthony A. Scarpino, Jr. ("Scarpino"), Asst. District Attorney

("ADA") Sharleen Bailon ("Bailon"), ADA Shameika Mathurin ("Mathurin"; with Westchester

County, Scarpino, and Bailon, "County Defendants"), City of White Plains Police Department

(the "WPPD"), WPPD Sergeant Steven Carelli ("Carelli"), WPPD Police Officer Robert

Rodriguez ("Rodriguez"), and WPPD Police Officer Ross Wade ("Wade"; with WPPD, Carelli,

and Rodriguez, "WP Defendants"; altogether, "Defendants"), alleging that Defendants

wrongfully detained and prosecuted Plaintiff in violation of her constitutional rights.  (*See*

*generally* Am. Compl. ("AC") (Dkt. No. 15).)  Before the Court is County Defendants' Motion

To Dismiss the Amended Complaint (the "Motion") pursuant to Federal Rule of Civil Procedure

12(b)(6).  (*See* Not. of Mot. (Dkt. No. 28).)

For the reasons stated herein, the Motion is denied in part and granted in part.

### I.  Background

#### A.  Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are assumed to

be true for the purpose of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit*

*Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per

curiam).

Plaintiff alleges that "in the evening of June 24, 2019," Carelli, Rodriguez, and Wade as

well as other members of the WPPD arrested her.  (AC ¶ 20.)  Plaintiff alleges that those

individuals "confined" her and "did intend to confine" her.  (*Id.* ¶ 22.)  Plaintiff "was aware, at

all times, of the arrest and the detention" but "did not consent to the arrest or the detention."  (*Id.*

¶¶ 23, 24.)  Further, per Plaintiff, "[t]he arrest was baseless and was made in the absence of

probable cause."  (*Id.* ¶ 25.)

Plaintiff alleges that following her arrest, "[t]he arresting officers were given exculpatory

information at the scene of the arrest" but "chose to ignore this information and made their arrest

in the absence of probable cause."  (*Id.* ¶ 27.)  Additionally, "[t]here was no arrest warrant issued

by any [c]ourt of law against [] Plaintiff," and Plaintiff accordingly asserts that the arrest "was not otherwise privileged." (*Id.* ¶¶ 28, 29.)

Following Plaintiff's arrest, Scarpino, then the Westchester County District Attorney, "prosecuted [] Plaintiff for the crimes of Menacing in the third degree and Reckless Endangerment in the second degree." (*Id.* ¶ 42.) Specifically, Bailon and Mathurin led Plaintiff's prosecution. (*See id.* ¶¶ 43–45.) "There was no superior court indictment in connection with the prosecution. Thus, there was no presumption of probable cause against [] Plaintiff." (*Id.* ¶ 47.)

Plaintiff alleges that "at the outset of the prosecution," the Westchester County District Attorney's Office, including Bailon and Mathurin, "w[as] provided by [] Plaintiff's attorney . . . with exculpatory evidence which conclusively proved that [Plaintiff]] did not commit the crimes of which she was charged." (*Id.* ¶ 50.) Specifically, "[t]he authenticated video showed [] Plaintiff driving her automobile, slowly, and then coming to a full stop on the street, on the date and at the precise time that it was alleged by the falsely swearing complaining witnesses that [] Plaintiff drove her vehicle recklessly and at a high rate of speed, endangering children and others on the very same street." (*Id.* ¶ 52.) Moreover, Plaintiff states that the video was given to the Westchester County District Attorney's Office "at a time when the matter was still under factual investigation, and prior to the time that the Assistant District Attorneys would be making a determination as to whether or not to proceed to trial." (*Id.* ¶ 53.)

"The prosecution," Plaintiff alleges, "was continued against [] Plaintiff in the absence of probable cause" and "was based upon, and continued, on the basis of patently falsified information and perjured testimony of persons purporting to be complaining witnesses." (*Id.* ¶¶ 54, 55.) Instead, Plaintiff asserts, "[t]he continuation of the prosecution against [her] was done

3

with actual malice . . . and was done in bad faith . . . with something other than a desire on the part of the prosecution to see the ends of justice served." (*Id.* ¶¶ 57–58.)  Moreover, "[t]he judicial process was used by [] Defendants in a perverted manner to obtain a collateral objective, which, upon information and belief, included punishing [] Plaintiff for no valid reason." (*Id.* ¶ 77.)

Plaintiff states that the actions undertaken by Mathurin and Bailon "were of an investigative nature" and "not related to an exercise of [their] discretionary duties." (*Id.* ¶¶ 59, 60, 61, 62.)

"The criminal proceeding was ultimately terminated in favor of [] Plaintiff," wherein the charges "were dismissed after a [bench] trial on the merits" before the "Hon. Joann Friia" of the White Plains City Court. (*Id.* ¶¶ 69–71.)

Finally, Plaintiff alleges that as a result of the arrest as well as her subsequent prosecution, she "sustained damages to her person, including damages for anxiety, emotional distress, public humiliation and shame, sleeplessness and otherwise." (*Id.* ¶ 30; *id.* ¶ 78.)

B.  Procedural Background

Plaintiff originally filed her complaint in Supreme Court of the State of New York, County of Westchester, on December 8, 2020.  (Not. of Removal ¶ 1.)  County Defendants removed the Action to the federal district court in the Southern District of New York on February 18, 2021.  (*See generally id.*)  WP Defendants filed an Answer on May 12, 2021.  (Dkt. No. 10.)  Plaintiff then filed the Amended Complaint on June 15, 2021.  (Dkt. No. 15.)  WP Defendants filed an Answer thirteen days later on June 28, 2021.  (Dkt. No. 17.)

County Defendants filed the instant Motion and supporting papers on September 30, 2021.  (*See* Not. of Mot.; Decl. of Irma Cosgriff (Dkt. No. 29); County Defs.' Mem. of Law in

Supp. of Mot. ("County Defs.' Mem.") (Dkt. No. 30).)  Plaintiff timely filed her Opposition on December 20, 2021.  (Pl.'s Mem. of Law in Opp. to Mot. ("Pl.'s Mem.") (Dkt. No. 34)).[1] Finally, County Defendants filed a Reply on January 19, 2022.  (County Defs.' Reply Mem. of Law in Supp. of Mot. ("County Defs.' Reply Mem.") (Dkt. No. 50).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a

---

[1] Plaintiff also filed a second self-styled "Memorandum of Law in Opposition," along with an Exhibit attached thereto, which simply includes unreported cases cited in the Opposition brief.  (*See* Dkt. Nos. 35, 35-1.)

complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

Plaintiff asserts several claims arising from the events described above, namely false arrest, false detention and imprisonment, malicious prosecution, and abuse of process.  (*See generally* AC.)  As it pertains to County Defendants, Plaintiff asserts claims of malicious prosecution and abuse of process.  (*See generally id.*)  County Defendants move to dismiss the

6

claims on various grounds, ranging from insufficient involvement to absolute immunity to failure

to state a claim.  (*See generally* County Defs.' Mem.; County Defs.' Reply Mem.)  The Court

discusses each to the extent necessary.

### 1.  Scarpino

County Defendants argue that claims against Scarpino must be dismissed for multiple

reasons: lack of service, absolute prosecutorial immunity, and Eleventh Amendment immunity.

(*See* County Defs.' Mem. 16.)  Plaintiff, in her Opposition, "consent[ed] to dismissal of this

[A]ction as against former Westchester County District Attorney Anthony A. Scarpino, Jr."

(Pl.'s Mem. 2.)  Because Plaintiff voluntarily withdrew her claims against Scarpino, the Court

dismisses such claims.

### 2.  Bailon and Mathurin

Plaintiff asserts malicious prosecution as well as abuse of process claims against Bailon

and Mathurin.  (*See generally* AC (naming Bailon and Mathurin only as it pertains to the

malicious prosecution and alleging all Defendants, collectively, committed abuse of process).)

### a.  Malicious Prosecution

County Defendants argue that Plaintiff's claim against Bailon and Mathurin for malicious

prosecution must be dismissed given the absolute immunity provided to prosecutors.  (County

Defs.' Mem. 10–15; County Defs.' Reply Mem. 2–5.)  Plaintiff argues, however, that the

Amended Complaint "sufficiently allege[s] that the actions of [Bailon and Mathurin] do not

entitle them to prosecutorial immunity."  (Pl.'s Mem. 4.)  Further, Plaintiff argues that "[t]here

was no superior court indictment in connection with the prosecution," meaning "there was no

presumption of probable cause against [] Plaintiff" and thus the continued prosecution of

Plaintiff amidst exculpatory evidence "was done with actual malice . . . and was done in bad

faith." (*Id.* at 5.)  Finally, Plaintiff argues that Bailon and Mathurin's actions "were of an investigative nature" and "not related to an exercise of [their] discretionary duties. (*Id.* at 7, 8.)

### i.  Absolute Prosecutorial Immunity Standard

"Absolute immunity protects a prosecutor not only from liability but also from suit." *Ogunkoya v. Monaghan*, 913 F.3d 64, 67 (2d Cir. 2019) (citation and quotation marks omitted). Prosecutors are entitled to absolute immunity from civil suits for damages under § 1983 when "function[ing] as advocates for the state in circumstances 'intimately associated with the judicial phase of the criminal process.'"  *Bernard v. County of Suffolk*, 356 F.3d 495, 502 (2d Cir. 2004) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976)); *see also Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) ("Prosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate.'" (alterations omitted) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994))).  However, not every action performed by a prosecutor is "absolutely immune merely because [it was] performed by a prosecutor." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Indeed, "[w]hen a [prosecutor] functions outside his or her role as an advocate for the People, the shield of immunity is absent."  *Hill*, 45 F.3d at 661.  Specifically, "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other."  *Buckley*, 509 U.S. at 273 (citation and quotation marks omitted); *see also Smith v. Garretto*, 147 F.3d 91, 94 (2d Cir. 1998) ("[W]hen a prosecutor . . . performs the investigative functions normally performed by a detective or police officer, he is eligible only for qualified immunity." (citations and quotation marks omitted)).

In sum, prosecutors enjoy absolute immunity for "acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [their] role as . . . advocate[s] for the State," but "[a] prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." *Buckley*, 509 U.S. at 273. A prosecutor's entitlement to absolute immunity therefore turns on "the capacity in which the prosecutor acts at the time of the alleged misconduct." *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000). When adjudging a prosecutor's actions for purposes immunity, the Supreme Court has charged courts to adopt "a functional approach, which looks to the nature of the function performed [by the prosecutor], not the identity of the actor who performed it." *Buckley*, 509 U.S. at 269 (citations and quotation marks omitted); *see also Van de Kamp v. Goldstein*, 555 U.S. 335, 342 (2009) (noting that courts "must take account of . . . 'functional' considerations" in deciding "whether absolute immunity attaches to a particular kind of prosecutorial activity" (citations omitted)).

Finally, "[d]istrict courts are encouraged to determine the availability of an absolute immunity defense at the earliest appropriate stage, and preferably before discovery . . . because an absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity." *Hutchins v. Solomon*, No. 16-CV-10029, 2018 WL 4757970, at *23 (S.D.N.Y. Sept. 29, 2018) (second alteration in original) (quoting *Deronette v. City of New York*, No. 05-CV-5275, 2007 WL 951925, at *4 (E.D.N.Y. Mar. 27, 2007)). "However, the Second Circuit has held that, 'when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a

matter of law on a motion to dismiss.'" *Varricchio v. County of Nassau*, 702 F. Supp. 2d 40, 65 (E.D.N.Y. 2010) (quoting *Hill*, 45 F.3d at 663).

### ii.  Application

In light of the allegations put forward by Plaintiff, the Court finds that Bailon and Mathurin are immune from the malicious prosecution claims.

As it relates to claims against Bailon and Mathurin, Plaintiff alleges only that the actions at issue "were of an investigative nature."  (AC ¶¶ 59, 60.)  On this point, Plaintiff's allegations are barren, offering no detail or specifics as to what, exactly, either Bailon or Mathurin "investigated."  Rather, Plaintiff limits the allegation to the fact that Bailon and Mathurin were given the evidence prior to Plaintiff's prosecution, implying that any action taking prior to Plaintiff's prosecution was, by definition, investigative.  (*See id.* at 8–10.)  In other words, Plaintiff's entire argument on this point can be summarized as follows: because "the criminal defense counsel provided [Bailon and Mathurin] with conclusive proof, by way of videotape evidence, showing that [Plaintiff] . . . could not possibly have committed the crimes for which she was charged" during the investigative phase, i.e. before the prosecution, Bailon and Mathurin's actions were investigative, thereby vitiating Bailon and Mathurin's entitlement to absolute immunity.  (*Id.*)

Plaintiff's apparent argument flies in the face of applicable precedent.  As the Second Circuit has made clear, "the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions" covered by absolute immunity.  *Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Hill*, 45 F.3d at 661 (noting that absolute immunity covers such acts as "initiating a prosecution and presenting the case" in court proceedings (citations omitted)).  This includes the deliberate

10

choice to move forward and prosecute an individual for crimes that a prosecutor knew the accused was "innocent of committing," as such a decision "describe[s] only functions for which a prosecutor is normally accorded absolute immunity." *Shmueli*, 424 F.3d at 238 (holding that ADAs were entitled to absolute immunity from allegations that they "maliciously prosecuted [plaintiff] for various crimes, all of which they knew she was innocent of committing"); *see also Harrison v. County of Nassau*, No. 15-CV-2712, 2016 WL 4083381, at *4 (E.D.N.Y. Aug. 1, 2016) (noting absolute immunity applies "even where the prosecutor knowingly prosecutes an innocent person"); *cf. Bernard*, 356 F.3d at 506 (holding that absolute immunity even protects "the knowing presentation of perjured testimony to a grand jury, without any prosecutorial involvement in its earlier inducement" (citation omitted)).  Therefore, that Bailon and Mathurin were allegedly shown purportedly exculpatory evidence "at a time when the matter was still under factual investigation, and prior to the time that [they] would be making a determination as to whether or not to proceed to trial," (Pl.'s Mem. 7), is of no matter.

Plaintiff's allegations are more correctly considered allegations that speak to Bailon and Mathurin's decision to charge Plaintiff, which falls squarely within the category of acts for which prosecutors are given absolute immunity.  *See Giraldo v. Kessler*, 694 F.3d 161, 167 (2d Cir. 2012) (holding that "pursuit of the charges" is a "legal decision[] at the core of the prosecutorial function" for which a prosecutor is absolutely immune); *Shmueli*, 424 F.3d at 237 (holding that "the initiation and pursuit of a criminal prosecution are quintessential prosecutorial functions" covered by absolute immunity).  Thus, "[t]he [a]mended [c]omplaint's generalized allegations fail to adequately allege that either [of the defendant prosecutors] functioned in any way that would prevent immunity from attaching." *Scalpi v. Town of E. Fishkill*, No. 14-CV-2126, 2016 WL 858955, at *10 (S.D.N.Y. Feb. 29, 2016).

Plaintiff's last stand—arguing that the decision to charge her was "done with actual malice" and made in "bad faith," (AC ¶ 57)—provides no cover.  A prosecutor's motives for actions that are deemed to be within his or her role as an advocate are irrelevant for purposes of absolute immunity determinations.  *See Shmueli*, 424 F.3d at 237–38 (holding that absolute immunity is "not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy"); *Bernard*, 356 F.3d at 503 (holding that "once a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused" (citation omitted)).  Therefore, even if Plaintiff is correct regarding Bailon and Mathurin's motive—and the Court in no way takes a position as to that allegation—it bears not at all on the Court's analysis, and Bailon and Mathurin's actions would remain protected from liability via absolute immunity.

Accordingly, the Court grants County Defendants' Motion regarding the malicious prosecution claim against Bailon and Mathurin.  *See Shmueli*, 424 F.3d at 237–39 (dismissing malicious prosecution claims against state prosecutors on the basis of absolute immunity); *Zanfardino v. City of New York*, 230 F. Supp. 3d 325, 335 (S.D.N.Y. Feb. 3, 2017) (dismissing malicious prosecution claims against ADAs wherein they "knowingly ignor[ed]" exculpatory evidence because the ADAs were absolutely immune (alteration in original)); *Tabor v. New York City*, No. 11-CV-195, 2012 WL 603561, at *9 (E.D.N.Y. Feb. 23, 2012) (holding that prosecutors conducting a pre-arraignment interview "constituted part of the process by which the prosecutor made a determination whether to proceed to the grand jury with the charges" and thus the prosecutors involved in the interview were immune from suit), *report and recommendation adopted*, 2012 WL 869424 (E.D.N.Y. Mar. 14, 2012); *Watson v. Grady*, No. 09-CV-3055, 2010

12

WL 3835047, at *18 (S.D.N.Y. Sept. 30, 2010) ("Even construed liberally, [the] [p]laintiff does

not allege any particular acts of investigative misconduct by [the defendant prosecutors].").

b.  Abuse of Process

Plaintiff asserts an abuse of process claim, stating that Defendants, including County

Defendants, "intended to do harm to [] Plaintiff by continuation of the prosecution against her,

after it was obvious that there was no probable cause to continue the prosecution."  (AC ¶ 75.)

Moreover, Plaintiff alleges, "[t]he judicial process was used by the Defendants in a perverted

manner to obtain a collateral objective, which, upon information and belief, included punishing

[] Plaintiff for no valid reason."  (*Id.* ¶ 76.)  County Defendants argue that this claim must be

dismissed because "there are no allegations plausibly asserting" every element of an abuse of

process claim.  (County Defs.' Mem. 20.)

"In order to establish liability for malicious abuse of process under § 1983, a plaintiff

must establish the claim's elements under state law as well as the deprivation of a constitutional

right."  *Hoffman v. Town of Southampton*, 893 F. Supp. 2d 438, 446 (E.D.N.Y. Sep. 28, 2012),

*aff'd*, 523 F. App'x 770 (2d Cir. 2013).  Under New York law, a plaintiff may assert an abuse of

process claim against a defendant who "(1) employs regularly issued legal process to compel

performance or forbearance of some act (2) with intent to do harm without excuse or

justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of

the process."  *Savino v. City of N.Y.*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Cook v. Sheldon*, 41

F.3d 73, 80 (2d Cir. 1994)).

Plaintiff's claim falters in the third and final element of the claim—often referred to as

"[t]he crux of a malicious abuse of process claim," *Kraft v. City of New York*, 696 F. Supp. 2d

403, 416 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 24 (2d Cir. 2011)—the collateral objective.  To

13

plead a collateral objective, a plaintiff must plausibly plead not that defendant acted with an "improper motive," but rather an "improper purpose." *Savino*, 331 F.3d at 77; *see also Lopez-Motherway v. City of Long Beach*, No. 20-CV-5652, 2021 WL 965158, at *4 (E.D.N.Y. Mar. 15, 2021) ("To establish a collateral objective, a plaintiff must prove that the defendants 'acted not merely with an improper motive, but to achieve an improper purpose.'" (quoting *Scott v. City of New York*, No. 16-CV-834, 2020 WL 208915, at *12 (E.D.N.Y. Jan. 14, 2020))).  In other words, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution.  Instead, [the plaintiff] must claim that they aimed to achieve a collateral purpose *beyond or in addition to* his criminal prosecution." *Savino*, 331 F.3d at 77 (emphasis added).  Examples of collateral objectives can include "infliction of economic harm, extortion, blackmail or retribution." *Wagner v. Hyra*, No. 19-CV-4, 2021 WL 475331, at *8 (N.D.N.Y. Feb. 10, 2021) (alteration omitted) (quotation omitted); *see also Hoffman*, 893 F. Supp. 2d at 449–50 (listing examples of collateral objectives), *aff'd*, 523 F. App'x 770 (2d Cir. 2013).

    Simply put, Plaintiff has failed to allege a collateral objective.  Plaintiff states in only the most general terms that the judicial process was used "to obtain a collateral objective . . . includ[ing] punishing [] Plaintiff for no valid reason," (AC ¶ 77), but Plaintiff does not articulate what, exactly, this otherwise nebulous and unnamed collateral objective is.  As stated above, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration and quotation marks omitted).  Having failed to provide more than a "naked assertion[] devoid of further factual enhancement," *Iqbal*, 556 U.S. at 678, Plaintiff fails to meet her burden under Rule 8 with regard to her abuse of process claim.

14

Accordingly, County Defendants' Motion with regard to Plaintiff's abuse of process claim is granted.  *See Lopez-Motherway*, 2021 WL 965158, at *4 (dismissing claims for abuse of process under § 1983 where the "[p]laintiff has failed to allege a collateral objective"); *Hoffman*, 893 F. Supp. 2d at 449 (collecting cases to show that "the collateral objective requirement is not satisfied by actions taken in prosecuting a case, even if done with a vindictive or vicious motive in an effort to prevail in the prosecution").

### 3.  Westchester County and *Monell*

County Defendants assert that Plaintiff's *Monell* claims—that is to say, claims against municipal defendant Westchester County—must be dismissed for failure to state a claim. (County Defs.' Mem. 17–19.)  Plaintiff seemingly agrees, notwithstanding tortured arguments to the contrary.  (Pl.'s Mem. 12.)

"To state a claim under [§ 1983], the plaintiff must show that a defendant, acting under color of state law, deprived him of a federal constitutional or statutory right."  *Sykes*, 723 F.3d at 405–06.  However, "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008), *cert. denied*, 558 U.S. 933 (2009).

Plaintiff's allegations are deficient in two separate ways.  With respect to the second *Roe* factor, "[i]t is well established that a *Monell* claim cannot lie in the absence of an underlying

constitutional violation." *DeRaffele v. City of New Rochelle*, No. 15-CV-282, 2017 WL
2560008, at *6 (S.D.N.Y. June 13, 2017); *see also Segal v. City of New York*, 459 F.3d 207, 219
(2d Cir. 2006) ("*Monell* does not provide a separate cause of action . . . ; it extends liability to a
municipal organization where that organization's failure to train, or the policies or customs that it
has sanctioned, led to an independent constitutional violation.").  That the Court found no
constitutional deprivation occurred as a result of a finding of absolute immunity, *see supra*
II.B.2, alone merits dismissal of a claim against Westchester County.  *See Lockett v. City of
Middletown*, No. 19-CV-8255, 2021 WL 1092357, at *5 (S.D.N.Y. Mar. 22, 2021) ("As outlined
above, Plaintiff failed to state a claim for the violation of a constitutional right; as such, any
*Monell* claim against the City must likewise be dismissed."); *cf. Segal*, 459 F.3d at 219
("Because the district court properly found no underlying constitutional violation, its decision
not to address the municipal defendants' liability under *Monell* was entirely correct."); *Schultz v.
Inc. Vill. of Bellport*, 479 F. App'x 358, 360 (2d Cir. 2012) (summary order) ("Because [the
plaintiff] was unable to establish an underlying violation of his constitutional rights . . .  his . . .
*Monell* claim necessarily fail[s] as well.").

Moreover, even if the Court had found a constitutional violation had occurred, Plaintiff
fails to adequately link such a violation to "an official policy of the municipality."  *Roe*, 542 F.3d
at 36.  On this point, Plaintiff asserts only that Defendants "engaged in conduct pursuant to a
policy or custom which deprived [] Plaintiff of certain constitutional rights."  (AC ¶ 82.)
Plaintiff fails to articulate any details regarding any purported custom or policy: no details of the
policy, no discussion of its origins or other externalities, or not even a name.  Rather, this is once
again nothing more than "a formulaic recitation of the elements of a cause of action [which] will
not do."  *Twombly*, 550 U.S. at 555.  In other words, County Defendants are correct that the

Amended Complaint is "devoid of any allegation from which the Court could infer 'that any alleged constitutional violations were caused by a municipal custom or policy.'"  (County Defs.' Mem. 16 (quoting *Torres v. Vasta*, No. 18-CV-8706, 2019 WL 4640247, at *4 (S.D.N.Y. Sept. 24, 2019)).)

In response to County Defendants' extensive *Monell* arguments, (*see* County Defs.' Mem. 17–19), Plaintiff asserts that the Fifth Cause of Action is not a *Monell* Claim—conceding that its pleadings under a *Monell* standard "would be insufficient"—but is instead a "[f]ederal [m]alicious [p]rosecution claim" against Westchester County.  (Pl.'s Mem. 12.)  Thus, Plaintiff curiously—which is to say, incorrectly—requests that the Action proceed against Westchester County as it need not be dismissed under *Monell* and related caselaw.  (*Id.* at 3.)

This is wrong.  Even if Plaintiff asserts otherwise, "for a plaintiff to prevail on a § 1983 claim *against a municipal defendant*, [s]he *must* satisfy the requirements set forth in *Monell* and its progeny."  *Askew v. Lindsey*, No. 15-CV-7496, 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (emphases added); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").  Thus, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Accordingly, Plaintiff cannot be said to have plausibly pled a claim against Westchester County, notwithstanding her attempts to frame it as anything beyond the scope of *Monell*, and County Defendants' Motion with respect to all claims against Westchester County is granted.  *See Nunez v. City of New York*, No. 14-CV-4182, 2016 WL 1322448, at *9 (S.D.N.Y. Mar. 31, 2016) ("Here, the only constitutional violation that could potentially give rise to [the] [p]laintiff's

*Monell* claim is his malicious prosecution claim . . . which, as the [c]ourt found above . . . is barred on absolute immunity grounds.  Even assuming that such a claim can provide the underlying constitutional deprivation for [the] [p]laintiff's *Monell* claim, the [c]ourt finds that [the] [p]laintiff has failed to allege any facts that would allow the [c]ourt to reasonably conclude that the [municipal defendant] failed to adequately train or discipline its prosecuting attorneys regarding a criminal defendant's constitutional rights."), *aff'd*, 735 F. App'x 756 (2d Cir. 2018); *see also Sanders v. City of New York*, No. 16-CV-7426, 2018 WL 3117508, at *11 (S.D.N.Y. June 25, 2018) ("[The] [p]laintiff's *Monell* claim must be dismissed for failure to allege a policy, practice, or custom that caused him injury."); *Wheeler v. Wallkill*, No. 16-CV-7441, 2017 WL 2999503, at *5 (S.D.N.Y. July 13, 2017) (dismissing a *Monell* claim where the complaint "makes no mention of any policy or custom in connection with the alleged violations").

### 4.  State Law Claims

County Defendants ask the Court to decline exercising supplemental jurisdiction over state claims, relying on caselaw favoring such an exercise of discretion.  (*See* County Defs.' Mem. 20.)  *See, e.g., Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." (alteration in original) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988))).  County Defendants misunderstand the Court's discretionary authority at this juncture.

Whether a district court can exercise supplemental jurisdiction is dictated by 28 U.S.C. § 1367(c).  Specifically, the statute holds that a district court may decline supplemental jurisdiction when it "has dismissed *all* claims over which it has original jurisdiction."  *Id.* § 1367(c)(3) (emphasis added).  Plainly, not all federal claims have been dismissed.  Rather, County

Defendants' "argument relies on a misreading of the statute: 'All claims' does not mean all claims against one defendant; 'all claims' means all claims in the case stemming from a common nucleus of operative fact." *Kegun Chen v. Oceanica Chinese Rest., Inc.*, No. 13-CV-4623, 2018 WL 3973004, at *4 (E.D.N.Y. Aug. 20, 2018); *see also Oladokun v. Ryan*, No. 06-CV-2330, 2011 WL 4471882, at *11 (S.D.N.Y. Sept. 27, 2011) (collecting cases and holding that "[§ 1367(c)(3)] does not apply in a situation where federal claims remain in the litigation, even if those claims have been dismissed against one of the parties involved").  In other words, the plain language of the statute "preclude[s] the application of [discretion to decline to exercise supplemental jurisdiction] in a case when *any* claim arising under federal law remains, regardless of the identity of the party against whom the claim lies." *Oladokun*, 2011 WL 4471882, at *11 (emphasis added).  Therefore, the Court lacks the discretionary authority to decline jurisdiction, sever state law claims, and send them back to state court.

Nonetheless, the Court finds that Plaintiff's state law claims of malicious prosecution and abuse of process against County Defendants must also be dismissed for the above-stated reasons. First, in light of the Court's findings that Bailon and Mathurin are entitled to absolute immunity with respect to federal charges of malicious prosecution, *see supra* II.a.ii, and given that the principles of absolute immunity that protect a prosecutor against federal malicious prosecution claims "brought under § 1983[] also protect a prosecutor against malicious prosecution claims brought under state law," *Shmueli*, 424 F.3d at 238 (collecting cases), Plaintiff's state law claims against Bailon and Mathurin for malicious prosecution similarly fail.  *See, e.g.*, *Lopez-Motherway*, 2021 WL 965158, at *4 (dismissing claims for abuse of process under both federal

and state law simultaneously where the "[p]laintiff has failed to allege a collateral objective").[2]

Second, Plaintiff's abuse of process claims fail for the same reasons articulated above, namely

Plaintiff's failure to allege a collateral objective. *See supra* II.B.2.b.  Finally, while New York

law "makes a municipality vicariously liable for the torts of its employees," [b]ecause its liability

is vicarious . . . a municipality is not liable if the employee directly responsible for the tort is

entitled to absolute immunity." *Collins v. City of New York*, 923 F. Supp. 2d 462, 480 (E.D.N.Y.

2013).  Having found no underlying violation, the Court finds that no state law claim has been

alleged against Westchester County.  Therefore, the Court dismisses all state law claims against

County Defendants.

### III.  Conclusion

For the foregoing reasons, County Defendants' Motion is denied in part and granted in

part.  Specifically, the Motion To Dismiss the federal claims against County Defendants is

granted and the Motion to sever state law claims is denied, though the Court nonetheless

dismisses Plaintiff's state law claims against County Defendants.

Plaintiff has already amended his complaint after receiving a pre-motion letter from

County Defendants wherein County Defendants previewed their intention to move for dismissal

on the grounds identified above.  (*See* Dkt. Nos. 9 (County Defendants request a pre-motion

conference for a motion to dismiss); 11 (Plaintiff requests time to amend the Complaint in

---

[2] Notwithstanding that the Court need not perform additional analysis, the Court feels
duty-bound to point out a glaring error in County Defendants' briefing.  Regarding the second
element of malicious prosecution, Defendants argue that "Plaintiff has failed to allege a
favorable termination of the criminal proceedings, which is fatal to a claim of malicious
prosecution."  (County Defs.' Mem. 20.)  Plaintiff clearly alleges that "[t]he White Plains City
Court (Hon. Joann Friia) dismissed the charges against [] Plaintiff, after a bench Trial, on the
merits."  (AC ¶ 71.)  Indeed, Plaintiff repeats this assertion in her Opposition.  (*See* Pl.'s Mem.
5.)

response to the pre-motion letter).)  Accordingly, the dismissal is with prejudice.  *See Jones v. Cuomo*, 542 F. Supp. 3d 207, 226 (S.D.N.Y. 2021) (granting a motion to dismiss with prejudice because "[the] [p]laintiff has previously amended his complaint, but his [a]mended [c]omplaint fails to state a claim on which relief can be granted.  Moreover, [the] [p]laintiff was put on notice of the deficiencies in his [a]mended [c]omplaint by [the] [d]efendants' September 14, 2020 letter previewing their anticipated motion to dismiss, but instead opted to oppose the motion rather than to seek leave to amend" (citations omitted)); *Wiese v. Kelley*, No. 08-CV-6348, 2009 WL 2902513, at *9 n.5 (S.D.N.Y. Sept. 10, 2009) (dismissing a "[p]laintiff's claims with prejudice" where "[t]he [c]ourt previously permitted [the] [p]laintiff to amend his original [c]omplaint after being served with [the] [d]efendant's premotion letter, which made [the] [p]laintiff aware of the fact that [the] [d]efendant intended to argue [the same arguments made in the motion to dismiss the amended complaint], as the "[a]mended [c]omplaint failed to address the deficiencies identified in [the] [d]efendant's pre-motion letter"); *see also Binn v. Bernstein*, No. 19-CV-6122, 2020 WL 4550312, at *34 (S.D.N.Y. July 13, 2020) ("To grant [the] [p]laintiffs leave to amend would be allowing them a 'third bite at the apple,' which courts in this district routinely deny." (collecting cases)), *report and recommendation adopted*, 2020 WL 4547167 (S.D.N.Y. Aug. 6, 2020); *cf. Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow

itself to be imposed upon by the presentation of theories seriatim." (alteration, footnote, and quotation marks omitted)).

The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 28), and close this case.

SO ORDERED.

Dated:   June 29, 2022
        White Plains, New York

_____
KENNETH M. KARAS
United States District Judge